*Formatted for Electronic Distribution*                          *Not for Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

Filed & Entered
On Docket
August 7, 2015

In re:

    **Todd Bowes Weaver and**
    **Tammy Lynn Weaver**                                   **Chapter 13 Case**
             **Debtors.**                        **# 07-10411**

---

**Todd Bowes Weaver and**
**Tammy Lynn Weaver,**
             **Plaintiffs,**
    **v.**                                                     **Adversary Proceeding**
**PHH Mortgage Corporation,**                                  **# 15-1002**
             **Defendant.**

---

*Appearances:*    *Rebecca Rice, Esq.*              *David Edwards, Esq.*
            *Cohen & Rice*                   *Bendett & McHugh, PC*
            *Rutland, Vermont*               *Burlington, Vermont*
            *For the Plaintiffs*             *For the Defendant*

## MEMORANDUM OF DECISION
### DENYING DEFENDANT'S MOTION TO DISMISS COUNT III OF COMPLAINT

Todd and Tammy Weaver filed a petition for chapter 13 bankruptcy relief on July 2, 2007. At the time of the bankruptcy filing, PHH Mortgage Corporation held a mortgage on the Weavers' principal residence. The Weavers' chapter 13 plan was confirmed on February 21, 2008, and included information about how PHH Mortgage Corporation's claim would be treated – and about the obligations with which PHH Mortgage Corporation would need to comply – during the term of that plan. The Weavers subsequently filed a complaint to initiate this adversary proceeding, alleging PHH Mortgage Corporation, as a result of various errors, has failed to comply with the terms of the Weavers' confirmed plan and has violated the requirements of several state and federal statutes. In response, PHH Mortgage Corporation filed a motion to dismiss some of the causes of action alleged in the Weavers' complaint. For the reasons set forth below, the Court denies PHH Mortgage Corporation's motion to dismiss.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and declares it to be a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L), on which it has authority to enter final judgment.

**PROCEDURAL HISTORY**

On July 2, 2007, Todd and Tammy Weaver (the "Plaintiffs") filed a petition for relief under chapter 13 of the Bankruptcy Code (doc. # 1 in main case 07-10411). On September 6, 2007, the Plaintiffs filed a chapter 13 plan (doc. # 20), and on December 17, 2007, they filed an amended plan (doc. # 50, the "amended plan"). On February 21, 2008, the Court entered an Order (doc. # 57) confirming the amended plan. On January 21, 2015, the Plaintiffs filed a four count complaint initiating the instant adversary proceeding (doc. # 1 in AP # 15-1002) (the "Complaint") and setting forth four causes of action.[1] Thereafter, the parties stipulated to several enlargements of time for PHH Mortgage Corporation (the "Defendant") to respond to the Complaint.

Rather than file an answer to the Complaint, the Defendant filed a motion to dismiss the adversary proceeding on April 24, 2015 (doc. # 13) (the "MTD"), in which it sought to dismiss Counts II, III, and IV for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), incorporated into the Federal Rules of Bankruptcy Procedure as part of Bankruptcy Rule 7012(b).[2] On May 27, 2015, the Plaintiffs filed an objection to the MTD (doc. # 16). In it, the Plaintiffs voluntarily withdrew Counts II and IV of the Complaint, and objected to dismissal of Count III. On June 5, 2015, the Court held a hearing on the MTD, at which both the Plaintiffs and the Defendant appeared. Based on the arguments presented at that hearing, the Court entered a scheduling Order on June 15, 2015 (doc. # 18), directing the Defendant to file a supplemental memorandum by July 3, 2015, and the Plaintiffs to file any response by July 17, 2015. The parties have done so and the matter is now fully submitted.

**LEGAL STANDARD**

The United States Supreme Court has enunciated, in great detail, the standard for deciding a motion to dismiss:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (U.S. 2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557, 127 S.Ct. 1955 (brackets omitted).

---

[1] All subsequent citations to the docket refer to adversary proceeding # 15-1002 unless otherwise noted.
[2] Although captioned as a motion to dismiss the adversary complaint, the MTD seeks to dismiss only Counts II, III, and IV of the Complaint. See doc. # 13, p. 7.

2

Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678-680 (U.S. 2009); see Mastafa v. Chevron Corp., 770 F.3d 170, 177 (2d Cir. 2014). The Court will scrutinize the Defendant's arguments to determine whether it has demonstrated Count III of the Complaint fails to "state a claim to relief that is plausible on its face."

## DISCUSSION

### i. The Complaint

The Plaintiffs' Complaint sets forth the following allegations, all of which the Court accepts as true for purposes of the instant MTD. The Plaintiffs borrowed the sum of $359,650 from the Defendant on June 6, 2005 and duly executed a promissory note in that amount. That promissory note is secured by a mortgage on the Plaintiffs' home. As of the date the Plaintiffs' amended plan was confirmed, the Plaintiffs were delinquent on this debt in the amount of $13,682.32. The Plaintiffs' confirmed plan provides that the Plaintiffs will cure that arrearage through the chapter 13 trustee, and also make regular ongoing payments on the Defendant's secured debt directly to the Defendant. At the time the amended plan was confirmed, the regular monthly payments were $2,691.64, consisting of $2,013.94 for interest and principal plus $677.70 for their tax escrow. The confirmed plan additionally provides that

> [c]onfirmation of the plan shall impose a duty on the holders/servicers of claims
> secured by liens on real property to apply the payments received from the trustee on

3

the pre-petition arrearages only to such arrearages; to deem the pre-petition
arrearages as contractually cured by confirmation; and to apply all direct payments
received by the debtors post-petition first to the month which is the month
following the filing of the Plan and then to each and every month thereafter and to
otherwise comply with 11 U.S.C. Section 524(i).

Doc. # 50 in main case 07-10411. This is standard plan language in this District.

The Complaint alleges the Defendant failed to apply the mortgage payments it received in a manner consistent with its obligations under the confirmed plan, either by applying Plaintiffs' payments improperly or by refusing to apply them at all, and instead the Defendant retained those payments in a suspense account. The Complaint also alleges that, in part as a result of this conduct, the Defendant (i) frequently and inaccurately modified the amounts due under the mortgage, (ii) mistakenly treated the Plaintiffs as significantly in default, (iii) filed a motion for relief from stay which asserted a corresponding inaccurate and large deficiency, (iv) provided the Plaintiffs with an inaccurate form 1098 over multiple years, (v) incorrectly reported the state of the Plaintiffs' debt to credit reporting agencies, negatively impacting the Plaintiffs' credit, and (vi) repeatedly charged the Plaintiffs with improper late fees and property inspection fees. The Complaint further asserts that, as a result of the Defendant's conduct, the Plaintiffs had no choice but to hire and pay an attorney to attempt to resolve these issues, and were also deprived the opportunity to refinance their mortgage debt.

Based on the Defendant's alleged conduct, the Plaintiffs assert four causes of action against the Defendant in this adversary proceeding. The Complaint alleges the Defendant (i) violated the terms of the Plaintiffs' confirmed chapter 13 plan, (ii) violated the Real Estate Settlement Procedures Act ("RESPA"), (iii) violated the Vermont Consumer Fraud Act ("VCFA"), and (iv) were negligent.[3] The Complaint seeks money damages, attorney's fees, and certain specific performance from the Defendant as a remedy for the Defendant's alleged violations and negligence.

### ii. The Scope of the MTD

Before beginning its analysis, the Court must address the scope of the MTD in two important respects. First, the Defendant's MTD seeks dismissal of Counts II, III, and IV. It does not seek dismissal of Count I.[4] Since the Plaintiffs have voluntarily withdrawn Counts II and IV, the sole issue presently

---

[3] Specifically, in the Complaint's third cause of action, the Plaintiffs assert the Defendant violated the provisions of 9 V.S.A. § 2451 et seq., which the Complaint refers to as Vermont's Unfair and Deceptive Trade Practices Act, but is more commonly known as the Vermont Consumer Fraud Act. Throughout the instant memorandum, the Court will refer to the provisions of 9 V.S.A. § 2451 et seq. collectively as the Vermont Consumer Fraud Act or VCFA.

[4] Count I is captioned "Failure to Comply with the Terms of the Plan" and includes a reference to 11 U.S.C. § 524(i). Doc. # 1, p. 6. It is unclear whether the Plaintiffs assert (i) the Defendant's alleged failure to comply with the terms of the amended plan is a separate basis for relief, distinct from, but implicating, § 524(i), or (ii) § 524(i) is the primary basis for relief. Because the MTD does not address Count I, the Court need not resolve this ambiguity at this time.

before the Court is whether Count III of the Complaint fails to state a claim to relief that is plausible on its face, and thus should be dismissed.

Second, the parties have devoted considerable attention, both at oral argument and in their briefings, to two particular allegations which are in an awkward posture at this time.  The first is the Defendant's alleged improper credit reporting (allegedly the cause of the Plaintiffs' inability to refinance their mortgage), and the other is the Defendant's alleged issuance of inaccurate form 1098s for the Plaintiffs' mortgage loan. The Defendant argues claims arising from those factual allegations are preempted by federal law and, under the pertinent federal law, the Plaintiffs are precluded from pursuing those claims for a variety of reasons, including statutes of limitations. The Plaintiffs respond they "are not seeking damages for the actual incorrect credit reporting or incorrect 1098 forms, but are showing those as examples of the unfair actions taken by [the] Defendant in the servicing of [the] Plaintiffs' loan which give rise to their claim [under the VCFA]." Doc. # 21, p. 1. The Plaintiffs' response appears to, on the one hand, acquiesce to the Defendant's position with respect to preemption and, on the other, suggest the Defendant misinterpreted the Plaintiffs' legal rationale for including those factual allegations in the Complaint. The parties have not addressed that issue thoroughly or clearly enough for the Court to determine what weight the alleged facts should receive, whether they are admissible for the limited purpose the Plaintiffs propose, and what import they would have on the Plaintiffs' legal theory as set forth in Complaint. However, for purposes of the MTD, the Court need not make a determination as to whether it can properly consider these alleged facts because, for reasons discussed below, the Court finds dismissal is not warranted, without regard to the role or legal weight of these allegations. To the extent a legal or evidentiary dispute concerning these allegations persists, that dispute can be resolved in the ordinary course of this proceeding.

### iii. The Vermont Consumer Fraud Act

Two provisions of the VCFA are pertinent to this action. The first, captioned "Practices prohibited; antitrust and consumer protection," describes the conduct prohibited by, and delineates the scope of, the VCFA. It provides, in relevant part

(a) Unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce are hereby declared unlawful.

9 V.S.A. § 2453. The second provision, captioned "Civil penalty," sets forth the private cause of action available to consumers under the VCFA, and delineates the damages available under private causes of action. It provides in relevant part

(b) Any consumer who contracts for goods or services in reliance upon false or fraudulent representations or practices prohibited by section 2453 of this title,

5

or who sustains damages or injury as a result of any false or fraudulent
representations or practices prohibited by section 2453 of this title, or
prohibited by any rule or regulation made pursuant to section 2453 of this title
may sue for appropriate equitable relief and may sue and recover from the
seller, solicitor, or other violator the amount of his or her damages, or the
consideration or the value of the consideration given by the consumer,
reasonable attorney's fees, and exemplary damages not exceeding three times
the value of the consideration given by the consumer.

9 V.S.A. § 2461.

### iv. Is the Defendant Entitled to Dismissal of Count III of the Complaint?

The Defendant asserts three arguments in support of its assertion that the Plaintiffs' Complaint

fails to state a claim upon which relief can be granted under the VCFA. First, the Defendant argues its

transactions with the Plaintiffs did not occur "in commerce" as required by § 2453. Second, the

Defendant argues the alleged actions were neither "unfair" nor "deceptive" so as to be unlawful under

the VCFA. Finally, the Defendant argues the alleged acts did not result in reliance by, or damages or

injury to, the Plaintiffs, which are essential to a private cause of action, and damages, under § 2461. The

Court will address each argument in turn.

*a. Did the alleged conduct occur "in commerce?"*

The Defendant asserts the alleged acts were not acts "in commerce" as required by § 2453. See

Doc. # 20, p. 11. The Vermont Supreme Court has recently articulated what the "in commerce"

requirement set forth in § 2453 encompasses. In Foti Fuels, Inc. v. Kurrle Corporation, the Vermont

Supreme Court held

> the "in commerce" requirement narrows the [V]CFA's application to prohibit only
> unfair or deceptive acts or practices that occur in the consumer marketplace. To be
> considered "in commerce," the transaction must take place "in the context of [an]
> ongoing business in which the defendant holds himself out to the public." Zeeman
> v. Black, 273 S.E.2d 910, 915 (Ga. Ct. App. 1980). Further, the practice must have
> a potential harmful effect on the consuming public, and thus constitute a breach of a
> duty owed to consumers in general. Id. By contrast, transactions resulting not from
> "the conduct of any trade or business" but rather from "private negotiations
> between two individual parties who have countervailing rights and liabilities
> established under common law principles of contract, tort and property law" remain
> beyond the purview of the statute. Id. (quotation omitted).

2013 VT 111, ¶ 21 (2013). Thus, to sufficiently allege the Defendant's conduct took place "in

commerce," the Plaintiffs must allege the conduct occurred in the context of an ongoing business in

which the Defendant holds itself out to the public, and has a potential harmful effect on the consuming

public. Additionally, the complained-of conduct must result from the conduct of a trade or business,

rather than from private negotiations between two individual parties.

Taking all allegations in the Complaint as true for purposes of the instant MTD, the Defendant's conduct satisfies the tests set forth in <u>Foti Fuels</u>. The Defendant is engaged in an ongoing business in which it holds itself out to the public: the Complaint alleges the Defendant is a mortgage servicing company located in New Jersey, and a summary review of this Court's past cases confirms the Defendant is a holder and servicer of consumer mortgage loans in Vermont. Indeed, the Defendant does not dispute this element of the test is satisfied.

The Defendant focuses on the requirement that the acts must have a potential harmful effect on the consuming public. It argues errors based on misapplication of payments unique to a single mortgage do not create a risk to the consuming public at large, and the facts of the present case are generally inapplicable to the public at large. Doc. # 20, pp. 11-12. This argument is unpersuasive. The loan and mortgage at issue are prototypical consumer transactions, entered into routinely by tens of millions of consumers nationwide and by tens of thousands of consumers in Vermont. The Complaint alleges a course of conduct characterized by dissemination of incorrect account information, misapplied or unapplied payments, and improper charges. All of these are acts which could have a potential harmful effect on the consuming public – those consumers whose mortgages the Defendant services – and could constitute a breach of the duty the Defendant owes to consumers in general.

To the extent <u>Foti Fuels</u> articulates a third requirement – that the transaction result not from private negotiations between two individual parties, but from the conduct of a trade or business – that requirement is also met here. There is no assertion by the Defendant that there was, at any time, a private negotiation between the Plaintiffs and the Defendant; indeed, a defining theme of the Plaintiffs' Complaint is the lack of coherent communication, much less direct negotiation, by the Defendant with the Plaintiffs. The Defendant did not bargain for the terms of the mortgage or the promissory note with the Plaintiffs, nor did it provide the original funds the Plaintiffs borrowed. Vermont Federal Credit Union made the loan to the Plaintiffs and thereafter the Defendant obtained the note and mortgage by way of endorsement and assignment (presumably pursuant to its ordinary course of business). It is evident the Defendant is in the business of acquiring and servicing residential mortgages, and the Complaint alleges the Defendant has engaged in unfair and deceptive conduct in the course of the mortgage servicing aspect of its business. Since that conduct does not arise out of any negotiated relationship the Plaintiffs and Defendant have with one another, but is rather a product of the Defendant's normal operation of business, this satisfies the third <u>Foti Fuels</u> requirement.

The Court finds all three elements of the "in commerce" requirements in <u>Foti Fuels</u> are sufficiently alleged in the Complaint, and the Defendant's MTD argument based upon this element fails.

*b. Were the alleged acts "unfair?"*

"In bringing a private consumer fraud action under 9 V.S.A. § 2461(b) … the act itself must be either 'unfair' or 'deceptive' so as to be rendered illegal by 9 V.S.A. § 2453, to which § 2461 refers." Dernier v. Mortgage Network, Inc., 195 Vt. 113 (2013). "'Unfair' acts and 'deceptive' acts each have their own tests that we have defined through our case law, both of which are considered objectively." Id. (citing Carter v. Gugliuzzi, 168 Vt. 48, 56, (1998) (test for "deceptive" acts) and Christie v. Dalmig, 136 Vt. 597, 601 (1979) (test for "unfair' acts")). In Christie v. Dalmig, Inc., 136 Vt. 597 (1979), the Vermont Supreme Court annunciated the factors to consider when determining whether conduct is "unfair." Those factors include

> (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers.

136 Vt. at 601 (quotations and citations omitted). Here, the Defendant presents two arguments why the alleged conduct does not constitute "unfair" acts or practices. First, the Defendant argues the sole unfair act alleged is misapplication of payments or accounting errors, which do not amount to an unfair practice, and the Complaint is fatally flawed on this point as it fails to state how payments should actually have been applied.[5] Doc. # 20, p. 9. Second, the Defendant argues the Complaint fails to allege any errors were purposeful or committed in bad faith, the parties' dispute is really nothing more than an ordinary contract dispute, and ordinary contract disputes do not fall under the auspices of the VCFA.

The Defendant's first argument is without merit. The Defendant is incorrect in its assertion that the sole unfair act alleged is misapplication of payments or accounting errors. As discussed supra, in addition to misapplication of payments, the Complaint alleges the Defendant charged the Plaintiffs late fees and inspection fees which were not actually owed and refused to apply payments made by the Plaintiffs while still retaining control of those funds. And, this argument ignores additional alleged unfair acts flowing from that misapplication, including the Defendant's filing of a potentially baseless motion for relief from stay to pursue foreclosure of the Plaintiffs' property.

The Defendant is also incorrect that those allegations could not describe "unfair" acts. The Court must consider whether the alleged conduct, which the Court accepts as true for purposes of the MTD, "offends public policy as it has been established by statutes, the common law, or otherwise whether, in

---

[5] The Defendant also discusses the Plaintiffs' allegation as to inaccurate form 1098s as an alleged unfair act. For the reasons set forth in Section ii, supra, the Court declines to consider any arguments surrounding the allegedly inaccurate form 1098s.

8

other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness," is "immoral, unethical, oppressive, or unscrupulous," and "causes substantial injury to consumers." The Plaintiffs assert the Defendant charged fees to which may not have been contractually due, while simultaneously providing the Plaintiffs with an inaccurate and constantly shifting accounting of their debt and payment obligations, and at one point, the Defendant refused to credit payments the Plaintiffs actually made, while retaining those funds. At the most basic level, such conduct offends ordinary principles of fair dealing and invokes questions of unjust enrichment. Moreover, it paints a picture of the Defendant as deriving every benefit from its relationship with the consumer borrower Plaintiffs, while abdicating all corresponding obligations, both contractual and ethical, to those consumers. Vermont statutes unambiguously describe a public policy interest in ensuring consumer borrowers receive accurate information regarding the amounts they owe, especially where there is an alleged default. This is evident, for example, in Vermont Rule of Civil Procedure 80.1, which requires a foreclosing plaintiff's counsel to file a certification, averring that counsel has personally reviewed the foreclosing plaintiff's documents and records and to certify those documents are "complete and accurate in all relevant respect." V.R.C.P. 80.1(g)(2). The conduct alleged in the Complaint falls far short of public policy encapsulated in Vermont Rule of Civil Procedure 80.1, even if, as the Defendant asserts, they result from errors, not ill will. At best, attributing no improper intent to the Defendant, its alleged conduct would demonstrate a business run haphazardly enough to significantly prejudice the Plaintiffs, to the Defendant's benefit, and falls leagues short of the expectations of both common law and Vermont public policy. At worst, the Defendant has systematically obfuscated the records it sent to the Plaintiffs regarding their obligations, increased the Plaintiffs' costs, misapplied the Plaintiffs' good faith payments, and benefitted financially from the Plaintiffs' default. Regardless of where its conduct falls on this spectrum, the Defendant's conduct might reasonably be characterized as sloppy and unscrupulous; if the evidence were to reflect awareness of the consequences of its conduct, the Defendant might accurately be deemed to have engaged in practices that were both unethical and oppressive.

Nor are the potential injuries from the Defendant's conduct to consumers insignificant. If the factual allegations in the Complaint are true, at worst, consumers dealing with the Defendant could lose their homes without cause, either as a product of illusory deficiencies, or as a result of the confusion the Defendant would cause with regard to the current status of the loan. In less severe situations, or where the borrower has competent counsel, consumers could still be faced with the prospect of excess fees and charges and continuing uncertainty, made all the worse by their likely dependence on the mortgage servicer for accurate information. The Court concludes the Defendant's first argument that the alleged

9

conduct could not constitute unfair acts fails.

The Defendant next argues the Plaintiffs have failed to allege the Defendant's misconduct was either purposeful or in bad faith, and therefore the parties' dispute is merely a simple contract dispute, outside the scope of the VCFA. It relies on Greene v. Stevens Gas Serv., 2004 VT 67 (2004), in support of the proposition that Vermont courts have held that a mere breach of the terms of a contract is insufficient, by itself, to constitute a violation of the VCFA. Assuming Greene articulates a general rule that contract disputes, without more, are insufficient to support a cause of action under the VCFA, for the reasons discussed above, the Court reads the Complaint to allege more than a mere contract dispute. Read liberally, the Plaintiffs' Complaint alleges the Defendant refused to credit the Plaintiffs' payments and nevertheless retained control over those payments, improperly charged fees and late penalties, persistently provided inaccurate information to the Plaintiffs, and, apparently based on that inaccurate information, attempted to foreclose on the Plaintiffs' home. Although the Plaintiffs may not specifically allege bad faith on the part of the Defendant, the alleged misconduct exceeds a basic breach of contract dispute.

Based upon the facts alleged in the Complaint, there is a sufficient record to support an unfair practices cause of action under the VCFA, and the Defendant's argument that the Complaint should be dismissed because the Plaintiff has failed to allege the Defendant's alleged conduct was purposeful or in bad faith is unavailing.

### c. Were the alleged acts "deceptive?"

The Defendant also argues the Complaint fails to allege acts which are "deceptive." In Carter v. Gugliuzzi, 168 Vt. at 56, the Vermont Supreme Court set forth a three-pronged test for establishing a deceptive act or practice.

> To establish a "deceptive act or practice" under the Act requires three elements: (1) there must be a representation, omission, or practice likely to mislead consumers; (2) the consumer must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be material, that is, likely to affect the consumer's conduct or decision regarding the product. See Peabody v. P.J.'s Auto Village, Inc., 153 Vt. 55, 57, 569 A.2d 460, 462 (1989). Deception is measured by an objective standard, looking to whether the representation or omission had the "capacity or tendency to deceive" a reasonable consumer; actual injury need not be shown. Bisson, 160 Vt. at 351, 628 A.2d at 1261; Peabody, 153 Vt. at 57, 569 A.2d at 462. To be reasonable, moreover, the consumer's understanding need not be the only one possible; "if an ad conveys more than one meaning to reasonable consumers and one of those meanings is false, that ad may be condemned." In re Bristol-Myers Co., 102 F.T.C. 21, 320 (1983). Furthermore, the Act "does not require a showing of intent to mislead, but only an intent to publish the statement challenged." Winton v. Johnson & Dix Fuel Corp., 147 Vt.

10

236, 244, 515 A.2d 371, 376 (1986).

Id. There is no doubt the Plaintiffs have sufficiently alleged the first and second prongs of this test: the

Complaint alleges the Defendant persistently provided incorrect mortgage statements, which would

certainly be likely to mislead consumers, and it is reasonable to interpret a mortgage statement as a

document that sets forth an accurate statement of the amount due on the mortgage. The Defendant

focuses its argument on the Plaintiffs' failure to allege the facts necessary to establish the third prong. It

posits the misleading effects, if any, of its incorrect mortgage statements were not material to this inquiry

because any deceptive statements were made after the Plaintiffs entered into the loan, and thus did not

affect the Plaintiffs' decision about whether to take out the subject mortgage loan. Doc. # 20, p. 10.

Additionally, the Defendant argues the Plaintiffs did not rely on the deceptive statements in actually

paying their mortgage, since the Plaintiffs frequently disputed the amounts due, and often paid less than

what was demanded precisely because they did not believe the payment due was correct. Id.

Based on the record before the Court and the parties' pleadings, it is unclear whether the

Complaint satisfies the third prong for deceptive acts or practices test. The Court is not aware of any

Vermont case law directly on point. On the one hand, the case law of which this Court is aware, and on

which the Defendant relies, is aimed at the more traditional scenario where a party's deceptive conduct,

such as a deceptive advertisement, induces a consumer to purchase goods or services, or enter into the

transaction. See PH West Dover Prop. v. Lalancette Eng'rs, 2015 VT 48 (Vt. 2015); Peabody v. P.J.'s

Auto Village, 153 Vt. at 56. This could support the Defendant's argument that because the Plaintiffs do

not allege they relied on any deceptive statements in entering into the transaction, the deceptive

statements occurring thereafter are not material. On the other hand, those scenarios are distinguishable

from the one at bar, and the alleged deceptive conduct appears to meet the technical requirements of the

third prong. Inaccurate statements would affect whether a consumer would make an accurate payment,

make a payment at all, seek a refinance, or default on the loan, all of which are "conduct or decision[s]

regarding the product." In light of the lack of clear guidance, and because the Court concludes above that

the Complaint sufficiently alleges "unfair" conduct, the Court need not, and therefore does not, rule on

the deceptive practices issue.

*d. Did the alleged acts cause damages or injury?*

Last, the Defendant argues the Complaint fails to articulate any damages stemming from the

Defendant's alleged unfair acts, which is a prerequisite for the Plaintiffs to assert a private cause of

action.  The Vermont Supreme Court has squarely addressed this issue.

> The section of the statute providing for a private right of action is § 2461(b), which
> requires a "consumer" to show either (1) reliance on a deceptive act in contracting

11

for goods or services, or (2) damages or injury from an unfair or deceptive act. If a
plaintiff, in bringing a consumer fraud action, either fails to allege facts that meet
the definitions of an unfair or deceptive act under 9 V.S.A. § 2453 or fails to
demonstrate the prerequisites to a private action, as we have itemized above under 9
V.S.A. § 2461(b), the case is properly dismissed.

Dernier v. Mortgage Network, Inc., 2013 VT 96, ¶ 56 (2013). The Defendant argues the Plaintiffs have

asserted only two forms of damages or injury: first, that the Plaintiffs were unable to refinance their

property due to the Defendant's alleged misrepresentation of the Plaintiffs' credit standing; second, that

the Plaintiffs spent funds on an attorney as a result of the Defendant's inaccurate accounting.[6] As to the

first putative type of damage, the Defendant argues that any damages are speculative, since there is no

allegation the refinance would have resulted in better terms than the Plaintiffs' current mortgage. As to

the second point, the Defendant argues that because the attorney the Plaintiffs hired to represent them in

resolving the dispute with the Defendant moved to withdraw shortly after she was hired, and because she

did not file any action against the Defendant, there is no relationship between the payment of that

attorney's fees and the causes of action alleged in the Complaint.

The Plaintiffs' assertion, in their July 17, 2015 response, that they are not seeking damages for

the Defendant's alleged inaccurate credit reporting appears to foreclose the possibility of the Plaintiffs'

recovering damages, whether speculative or not, from their failed attempt to refinance, to the extent that

argument rests on the Defendant's inaccurate credit information. Thus, the Defendant's position on that

point may prevail. However, the Defendant's argument as to the second alleged injury is not persuasive.

The Defendant provides no legal support for its assertion that there is no relationship between the

Plaintiffs' payment of their prior attorney and the allegations in the Complaint. The Complaint asserts

the Plaintiffs retained their prior attorney "to help them resolve … issues with [the Defendant]" and that

they paid that attorney $2,998.50. Doc. # 1, ¶¶ 10-11. Those allegations are sufficient for the Court to

reasonably infer a relationship between the Defendant's alleged unfair conduct and the sums the

Plaintiffs paid to an attorney to assist them in resolving their differences with the Defendant.

More importantly, the Defendant overlooks several other allegations of damages set forth in the

Complaint. As discussed above, the Complaint alleges, among other conduct, that the Defendant charged

unwarranted fees and penalties, refused to credit payments the Plaintiffs made, charged the Plaintiffs

excess interest, and misapplied payments. All of these are potentially "damages or injury from an unfair

… act." Dernier v. Mortgage Network, Inc., 2013 VT 96 at ¶ 56. Therefore, the Court finds the

---

[6] The Defendant also argues the Plaintiffs cannot demonstrate reliance on a deceptive act in contracting for a good or service.
In light of the Court's determination in Part iv(c), supra, the Court declines to address this argument.

Complaint has articulated injury and damages caused by the Defendant's alleged unfair acts sufficient to support a private cause of action. Consequently, the Defendant's argument that Count III of the Complaint should be dismissed because the Plaintiffs did not sufficiently identify and describe injuries and damages fails.

## CONCLUSION

For the reasons set forth above, the Court finds the Plaintiffs' Complaint sufficiently alleges unfair acts, in commerce, which resulted in injury and damages to the Plaintiffs. Accordingly, the Defendant's MTD is denied with respect to Count III of the Complaint. The Court also finds, in light of the Plaintiffs' voluntary withdrawal of Counts II and IV, the Defendant's MTD must be denied as moot with respect to Counts II and IV.  The matter will proceed toward trial on Counts I and III.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law.

August 6, 2015                                            Colleen A. Brown
Burlington, Vermont                                  United States Bankruptcy Judge